This morning is 13-13-11, Generic Power Systems v. Kohler. Mr. Hartman. Yes, good morning, Your Honors. It's a pleasure to be here again before this Court. May it please the Court. We here contend, Your Honors, that the trial court misconstrued two patent claims of Generac's H21 patent relating to power generation systems. We also contend that the Court granted a summary judgment as to Claim 19 when there were, in fact, genuinely disputed issues of fact. In Claim 19, we believe the Court misconstrued predetermined operating parameters when it failed to consider the entire claim context and gave it a meaning that included basically an on-off switch. Rather than a parameter that relates to the operation of the system, it included turning the system on and off. We don't think that's an operating parameter by the very language, by the very words in the claim. Is that what you proposed? I mean, did you propose early on that there be a claim construction that would explicitly exclude the start and stop stance? Yes, Judge. We believe that when we both construed, both sides construed the term operating parameters, not focusing on predetermined initially, because there was no issue as to that, and both sides, I believe, agreed that it did not include on-off switches. It was not until the judge, Sue Esponte, construed the patent claim, again, in connection with a motion for clarification, that the matter of, well, here now on-off functionality, is that included or not? And all of a sudden, the Court said it was included. But wasn't that the subsequent claim construction, which is the broadest one that I think we've got on the table? I thought that happened after summary judgment. No, it happened before summary judgment. Summary judgment on claim 19. Right. At that time, was that broad construction the one that the judge had already applied? No, initially, it was unclear. Initially, the judge had not indicated that on-off switches were part of an operating parameter language. It was only after the prior art, if you will, forced him to do so in order to maintain his summary judgment order that he did so. Under what happened here, it is simply that the judge had entered the summary judgment. We then moved for reconsideration in light of some evidence that showed that, in fact, these parameters were not at all sent over a network. And that only an on-off switch was sent over the network. At which point the judge said, well, I'll just expand my definition then of predetermined operating parameters, so it includes on-off switches as well. And having done that, now the prior art continues to read on to the claim language. That's what happened. If you were right on that, that affects the anticipation of both claim 19 and claim 23? Yes, it impacts both. What's the impact of the at least one? Well, the impact of the at least one relates only to claim 23, and it is simply an additional, we believe, misinterpretation of the claim, taking a word out of context. So your view is that the correct construction of at least one means something other than one, just one? It means one that is connectable, one that is modularly fits within the system. It means one, yes, but a special one, one that can be connected. And that is clear from the language of the entire claim when you read it. This patent relates to a modular power system in which multiple generator sets can be linked together. Think of it as maybe a Lego set where you put the blocks, the Lego blocks together. They all have to fit together. And the at least one of claim 23 and the rest of the claim language in claim 23 relates to the, if you will, the starter set where you start out with one block. Well, that language is identical to the same limitation in claim 19 with the exception that at least one in 23 is changed to in claim 19, a plurality. That is correct. So what is the difference between a plurality and the definition you're promoting for at least one, which would not include one under certain circumstances? The difference is more than one gen set in the system. Claim 19 relates to, if you have two, three, four, you have more than just one system linked together. And claim 23? I'm sorry, did you? 23 just means you can have one set. Yes, but it has to be the special one that can be expanded into two, three, four, five. It's, if you will, the starter set, as I like to call it. If one can fulfill the limitation, why does it matter that it can be expandable or not? Because, Your Honor, that's the key. The prior art contained all kinds of single set generator systems, all kinds of them. Well, you got over that in the other claim by claiming a plurality. But if you'd meant to claim something that was capable of being more than one set, wouldn't you have said that explicitly? At least one seems a very ordinary term, and it means one or more, doesn't it? I understand the argument completely. My point is this, that when you read this patent, it relates to, as I say, I call it shorthand, modular power system. More than just any old generator system. We had, you know, the prior art was full of generator systems in general. This related to a special generator system that could be linked together. And so when you have your first generator system, it has to be open to connection with others. Can you point to me anywhere in the language of Claim 23 that suggests that it has to be capable of being expanded? Yes, if you look at the second paragraph, second sub-paragraph of Claim 23, it talks about interconnecting at least one generator set. Interconnecting at least one. Interconnecting at least one generator to a load. To me that suggests you're connecting one generator set to a load. It doesn't suggest you're connecting more than one generator set to a load. It says, right, it says to a load and to a network. Now it talks about, we go on, each generator set. It can be one or more. It can be one or more. Each generator set having the ability to restart and stop. And then it talks about selecting a generator set. Again, the idea is... But if there's only one generator set, you only select, there's only one to be selected. I mean, I still don't see how that you get that from the claim language of 23, you get it has to be capable of being attached to more. Clearly, in 19, it has to be more than one because you used the word plurality. You could have been, if you wanted it to be more than one generator set in 23, you could have said the same language there. Every case I've ever tried, I could have changed the claim language or would have changed the claim language. Clearly, we could have, or whoever drafted this could have done, could have written it differently. If we disagree with you on the one or more language, what does that do to your case? Well, on claim 23, our position is that we agree that we accept the non-infringement verdict on claim 23 anyway. We are not asking for a retrial if you reverse on claim construction of either part of claim 23. Claim 23, we want the validity restored, ideally. We agree that there are some independent reasons why the jury accepted and why it is reasonable for a jury to have accepted a non-infringement position. So we're not asking for a retrial. So claim 23 would, however, still be subject to the reconstruction of predetermined operating parameters, of course. That is a separate issue that also… I'm a little confused. If we agree with you on predetermined operating parameters that the construction and the jury instructions were wrong, you're not asking for a new trial on that? On claim 23? Not on claim 23. We're not asking for a new trial on claim 23 because we believe we have not appealed it. We have not appealed the non-infringement decision, the separate non-infringement decision. So we are conceding that claim 23 infringement-wise isn't going to be retried. We do ask for the court to vacate the invalidity holdings as to claim 23 because of the wrong claim construction as to predetermined operating parameters and or the at least one. Now if we disagree with both of your views on the two terms on claim construction, where does that leave you? Do you still have a complaint about the at least a summary judgment of invalidity on claim 19? Is that all you're left with if we disagree with the claim construction? That is correct, Your Honor. We are left with the point that a summary judgment was entered when there were genuinely disputed issues of fact. We believe very strongly that there was no one system, no one Cummins-O'Neill Power Command system proven up to have been sold prior to the critical date. Didn't their witness say that he sold those systems? And as I could tell from the record, you all never deposed Mr. Ronsoff. Mr. Ronsoff submitted affidavits or declarations in which he contended that he was a salesman in the 90s and that he sold systems under the name Power Command. He never indicated a specific system that he sold. He did refer to some systems that apparently went to the University of Arkansas. He did that, but he never told us what systems. Power Command, Your Honor, is a trade name for a broad group, a family of products that was marketed by Cummins-O'Neill. We don't – it includes all sorts of hardware. The district court relied on other documentary evidence, which he found quite persuasive, including I guess in particular the 90s manual, which I think he covered all of. And that is one of our big objections because under the law of this circuit, you first have to establish the existence of a unit, a device that was in fact sold. And then you can patch together a bunch of references that characterize what that system was and what it consisted of. You cannot patch together a bunch of documents and references to try to establish the existence and sale of a system in the first place. And what we are saying is – Why doesn't a testimony suffice for the existence of a system and then the district court judge can look at the documentary evidence to fill out what that system was? That's right. And the University of Arkansas, which is the only customer that was mentioned, we have no indication of exactly what system that was. Was it switchgear? Was it some controllers? Was it generator sets? How were they linked together? The burden of proof was on Kohler. He said in his statement that I personally sold power command systems that included the components and functionality described in the brochures. Why isn't that enough? Because we don't know what systems they were and what the properties were. When you look, for example, at the brochure that this witness – Let me ask you another question if I can. Didn't you agree when you got to the jury instructions that the Cummins power command system was prior art? Yes. Why isn't that a waiver of this argument? We agreed that not that the Cummins system was prior art, that this brochure was prior art. I distinguish between – So if you have that brochure that that's prior art, and then you have the testimony of this witness saying I sold systems that are reflected in the brochure, that's not enough for anticipation? No, because this brochure does not show the elements of the patent claim. This brochure alone does not show the elements of the patent claim. And this is why the judge went to at least two brochures in his decision. He can't find it all in this brochure, Your Honor. And that is the problem with – What is the brochure? Just because we're on a recording here, what brochure are you referring to? It's the brochure that – I'll identify the writing appendix. Number 3658 is the first page. It's this power command paralleling generator set control. It's a principle reference that the trial court relied upon. It does not show – and I don't know if Your Honors have it in front of you. But if you were to refer to page A3661, for example, there is a paragraph that the trial court referred to or relied upon. And interestingly, the trial court didn't cite one of the more significant sentences. If you look at that paragraph towards the bottom, it talks about certain parameters that were sent or that were entered into a generator system. And then it says all operator-level and service-level control system adjustments. That's what it was just talking about. And the all is underlined twice. All of them are made through digital, raised, lower switches from the front of the control panel. The front of the control panel is at the generator set. It is not sent over the network. Remember, one key feature of all of these claims is that these parameters are sent over network. This document clearly shows they're not sent over a network. You're into your rebuttal time. Okay. I will rest at this point and save my time. Thank you, Judge. And we'll restore a couple minutes on rebuttal. May it please the court. From the answer in this complaint through closing argument, Kohler had an abundance of riches of invalidating prior art, both patent and non-patent prior art. At every step of the way, we linked the prior art to the terms in the claim. Was there a discussion, was it on the table before or after summary judgment that the start-stop commands were or not covered by the claim construction? No, it wasn't, Your Honor. In fact, if you read the district court's opinion, the district court stated that it took Generac's interpretation of predetermined operating parameters, which Generac defined and the court accepted verbatim, a parameter that, when varied, changes the operation of the system. Was there ever any understanding or discussion as to whether or not that included or excluded the start-stop command? There was not, Your Honor, and the reason is very clear from the record. All of the prior art shown, including Cummins' own, went much further than merely start and stop commands. And because Claim 23 required a start time in advance and setting a stop time in advance, which the patent itself calls one of the various operating parameters, since those were clearly sent over the network for the prior art shown, the parties didn't get into this dispute. Isn't it fair to say, however, that the ultimate claim construction adopted by the district court was extremely broad and was clearly – I mean, your friend argues that it would read the word predetermined out of the claim language, and I can kind of see his point on that, right? No, Your Honor, and let me actually read from the court's decision on clarification. And that, as you can see, was a very short, quick motion after summary judgment when there was some scrambling going on. The court stated that start-stop, not to mention wake-up and load-demand on-off were predetermined operating parameters. The court expressed some surprise that the parties didn't dispute predetermined earlier because of the reason I had mentioned to you, that there was no question these were predetermined operating parameters. But even the prior art the court had showed predetermined operating parameters in Generac's new interpretation. And it is important to note that the interpretation offered to this court was never offered below. Start and stop when sent over a network was something contrary to what Generac told the patent office the prior art showed, which was the sending of two-way communication with generator controllers for multiple generators. So the court was not off base, even in its broad interpretation, because the patentee chose a very broad various operating parameters. There are some independent claims not at issue in this case where it narrowed various operating parameters more than that, but I don't think the court was too broad in its interpretation. And the reason, again... When you were talking a couple minutes ago, I think you used the word advanced start and stop commands, which I don't know if that was very intentional or not. But it seems that his definition covered kind of anything instantaneous or spontaneous, not just future, right? The ultimate determination in the motion to clarify said stop and start, but it also mentioned... So if somebody just sits down at a remote terminal and types in a command that says start now, that's a predetermined operating parameter within the definition? It is within the definition of the court, Your Honor. How is that in any way really an operating parameter for a system? It seems like operating parameters are this set supplies 50% of the load, this set supplies 50% of the load. Or when the demands get so high, then this one may turn on. And that sounds like a predetermined start-stop. But just sitting down and typing in a command or even pushing a button doesn't sound very predetermined. And that is exactly what the court found was undisputed about Cummins' element, even in the later argument offered by Generac, that there were four settings, start, stop, auto or wake up, and load demand on and off. And wake up is the system can wake up if there's a signal from automatic transfer switch or not. And load demand on and off is when the load reaches a certain point, it will automatically turn on or shut off. Those were all in Generac's own motion for clarification parameters. They complained that they were merely binary parameters. But those real-time signals sent to the generator controller would flip switches. One switch that was flipped was on-off. One switch that was flipped was put it in auto mode, which is absolutely a predetermined operating parameter. One is setting it up so that it can rise or fall under load demand. This court asked a very important question, although it now turns that Claim 23 seems to be out of the case. That wasn't clear from the briefing. But the reason why... I think your friend was saying that the finding of infringement, of non-infringement, was no longer in the case. That leads right into why I want to address the importance of the at least one. We agree with the district court below that at least one means one or more than one. And that's especially clear in a patent where a plurality was used when a plurality wanted to be used. The invention, despite what Generac has claimed, was much broader than what they referred to as a modular system. In column three of the patent, line 46, this is A128, in accordance with a still further aspect of the present invention, a method of managing the distribution of electrical power is provided. The method includes the steps of interconnecting at least one generator set to a load and to a network. Each generator has the ability to be start and stop. And the background of the patent makes clear that one of the backgrounds was the need, if the utility wished additional power from people's standby generators, it can enter into a deal with them to remotely start, stop your home generator, for instance, to go on to the grid. So the claim that this patent only referred to modular generators is contradicted by the specification itself. We also think you don't have to go any further with at least one. The reason that was so significant to this case is that it turned out through discovery and the jury correctly found that Generac's own prior art, Utility 50, which was a single generator system, did send exactly the parameters in question here to a remote generator over a network. So Generac's own prior art undisclosed to the patent office was found to be an on-sale bar, which we believe is why Generac was fighting this issue as hard as it was. As to the arguments about the record on the Cummins-Onan system, we put into the record, not only on Cummins-Onan, but each of the non-patented prior art, a witness testifying about the authenticity of the documents and that a system was sold in conformity therewith. And that's the key term in the initial Ronza Declaration. Are you talking now about Claim 23? I'm talking about Claim 19. Claim 19 that went out on summary judgment. Yes. As my time winds down, I'm trying to address all the arguments. The problem with the witness testimony, as I see it, is he doesn't ever specifically identify the features of the system that was sold. He just says a system was sold consistent with some of these brochures. Well, it was more than consistent with the brochures. And actually, his third declaration, which is in the record, did say more than real-time systems were sent. But what he does say and what this system shows is there are multiple controllers. There's a generator panel on each individual generator, and then there's a system controller, which is a serial connection, network connection to multiple generators. What the documentation shows, not only what has been referred to as our prime reference, which specifically says that parameters can be sent on a laptop, but also the additional documentation showing that the master controller had on it a computer graphical depiction of the plurality of generators connected to it and the ability to control those over a serial connection. So that the user standing, for instance, in the control room had this master control panel. The master control panel controlled generator one, including start and stop time and other indisputable predetermined operating parameters. And what Mr. Ronza testified to was that master control panel and the plurality of generators was sold. That was the conformance therewith. And there was no initial dispute in the record. There's nothing contradicting Mr. Ronza. And that is why the district court, we believe, correctly found there was no dispute effect of what the Cummins own-in system not only disclosed, but did. It's not a particularly large leap to take one of the leading generator manufacturers in the country and say that equipment was sold that conformed with... These aren't ads. These are technical bulletins to very experienced people in the industry. There was a comment made about what, going back to Claim 23 and at least one, interconnecting a generator to a load and to a network. We believe that term simply says that in between a network and a load is a generator. We don't think that in any way changes the plain definition of what at least one means. And if there are no... I'm glad to handle any... try to handle any questions from the panel, but thank you. Three brief points, Your Honor. First of all, in the Ronza declarations that supposedly showed the sale, there was never an application even attempted to have sort of a claim chart like we usually see. Like this court I'm sure I've seen many times where the features of the claims are applied to the system that supposedly was sold. It doesn't exist. In that particular declaration? In any of the declarations. In any of them. There was never an application of Claim 23 to an allegedly sold product. Ronza simply says that there was a direct serial network. I'm reading from A9053. It says capable of storing and sending predetermined operating parameters. The claim requires selecting over the network a particular of the gen sets in a system. It was conventional to directly link to have a one-to-one connection between a generator set and some control panel. That was known. What was not known was a networked setup where you had to select where you can pick the generators you wanted and send predetermined operating parameters. So for all we know, these declarations, all they describe was a direct link into a gen set. That was before the patent office. The Thompson patent had that. With a modem, you can dial into a generator, single generator, not networked together. So Ronza simply didn't establish the element of the claim as I said earlier. Point one. Point two, sadly, regrettably, there was no briefing on this new claim construction. And I think we perhaps learned that maybe we lawyers do serve a function sometimes for court. We can be very helpful in these claim construction proceedings. The judge was in a rush. We were a week from trial. He didn't want to change the trial date. He reaffirmed it and we didn't have time to brief, to help him with this issue of are stop-start commands included or not. I wish he would have asked us to brief it. Did you have a third point because your time is running out? Yes. My third point is it's very clear there's a big factual issue over what is in the brochure that I referred to earlier. Thank you very much. Thank both counsel. The case is submitted.